BADGER OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95482. Promulgated August 14, 1940.

Ross M. Lambdin, Esq., and Walter T. Russell, Esq., for the petitioner.

J. L. Backstrom, Esq., for the respondent.

OPINION.

DISNEY: The respondent allowed depletion upon amounts received from International by petitioner as royalty payments upon the two-thirds royalty interest owned by petitioner, but denied depletion upon $305,000 received as consideration for conveyances to International. The question presented here arises upon the disallowance of percentage depletion upon the $305,000. The gist of the principal problem is whether depletion is allowable on the theory that the petitioner, having owned both a leasehold and about two-thirds of the lessor's interest, was in effect in conveying to International, the lessor of a lease, retaining an economic interest, under such cases as *Herring* v. *Commissioner*, 293 U. S. 322, or should be denied on the theory that it occupies the position of an assignor of a lease, within the principle enunciated in *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, and cases to the same effect.

The petitioner executed and delivered (a) an assignment in the usual form of an oil and gas lease as to about 1,327 acres of land, (b) an assignment of an oil payment, (c) an original oil and gas

lease; and a "Royalty Owner's Agreement" releasing, as such royalty owner, International from certain obligations as leaseholder.

The oil payment, of a value of $650, was payable from the net proceeds of one-fourth of the oil or gas as, if, and when produced and sold by the McIlroy Oil Co., to whom petitioner assigned the lease. McIlroy was not liable personally for the payments. After any default in payment, petitioner's signature was necessary upon division orders on the sales of oil or gas. In assigning to McIlroy, the petitioner retained an economic interest in the oil and gas, but sold such interest for cash, and was not entitled to depletion upon $650, that part of the $305,000 consideration attributable to the oil payment. *Commissioner* v. *Fleming*, 82 Fed. (2d) 324; *R. R. Ratliff*, 36 B. T. A. 762; *Rawco, Inc., Ltd.*, 37 B. T. A. 128 (139).

Included in the lease assigned to International was a tract of 130 acres in Carson County. This was not included in the warranty deed by which the petitioner acquired the remainder of the estate of the lessors, Lewis and wife. Therefore the petitioner owned no interest in the 130 acres, except as lessee. Depletion was properly denied, to the extent of $2,000, the value of the lease. *Helvering* v. *Elbe Oil Land Development Co.*, *supra;* *Darby-Lynde Co.* v. *Alexander*, 51 Fed. (2d) 56. *Hammonds* v. *Commissioner*, 106 Fed. (2d) 420.

This brings us to consideration of the principal issue: As to those lands in which petitioner had acquired not only a lease, but the lessor's interest, except approximately one-third of the rights to royalties under oil and gas leases, is petitioner entitled to depletion upon amounts received, in large part for an assignment of the lease held by it, and as to a smaller amount of land, for delivery of a lease executed by petitioner itself, and for the "Royalty Owner's Agreement" as to offsetting wells, etc.? In effect, the petitioner argues that it occupies the same economic position as the original lessor, having acquired his interests (except one-third of royalty rights conveyed to others) and has an economic interest in the production to be realized from the lease conveyed and is entitled to depletion. Petitioner bases its contention in part upon the idea of merger of lease in the larger estate acquired from the lessor, but urges that, irrespective of merger and ignoring the technical forms of conveyancing, such an interest in future production remained in the petitioner as to require allowance of depletion upon amounts received for the conveyance.

We think it plain that petitioner's position must depend upon whether its leasehold interest was merged into and extinguished by the acquisition of the remaining interests of the lessor; for it is not to be doubted, in the light of the decisions above enumerated, that an assignor of a lease, merely assigning the rights thereunder to his assignee, does not, in receiving a cash consideration for the assign-

ment, derive "gross income from the property" within the terms of section 114 (b) (3) of the Revenue Act of 1934. The petitioner, a lessee, having received a cash consideration from International, its assignee, must demonstrate that its position is not that of mere assignor. In fact, it executed, in large part, an ordinary assignment. Repeated pronouncements of course forbid undue regard for mere forms of conveyancing and require consideration of the true economic status of the taxpayer. Yet merger, upon which in essence petitioner must rely to escape the position of ordinary assignor, is a question largely of intent, and the fact of execution of an assignment, rather than an original lease, as to most of the lands, clearly casts some light upon intent, particularly in connection with the other facts here presented. As to a small portion of the lands, the petitioner executed an original lease. Why was an assignment executed as to the greater portion? Obviously, the distinction between assignment and lease was recognized, and an assignment intentionally used. This action, by the owner of both the lease and most of the lessor's interests, seems clear indication of intent not to merge the two interests. "* * * the merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, said merger was against his manifest interest." *Factors' & Traders' Insurance Co.* v. *Murphy*, 111 U. S. 738. *Caprito* v. *Grisham-Hunter Corporation*, 128 S. W. (2d) 149 (Civ. App. Texas). From examination of all of the evidence herein, we are of the opinion that the petitioner did not intend merger, but intended what was actually done, as to the principal lease—to assign the lease. The language was that of an ordinary assignment, and was so captioned. Therein reference is first made to the lease executed by the land owner in 1921 and then repeated reference is made to the "said lease and all rights thereunder" and to the fact of transfer of right, title, and interest "in and to said lease and rights thereunder." No rights are reserved to the petitioner by the instrument, as would be done under an oil and gas lease (and is in fact specifically done in the original oil and gas lease also executed, and hereinafter discussed). The instrument conveys rights—it does not retain or create them for the petitioner as owner of the fee or royalties or in any manner refer to its rights or ownership other than as lessee. On the contrary, the instrument recites a convenant that the rents and royalties due and payable under the lease have been paid, thus assuming the position of the grantor to be that of lessee. Moreover, the intent to distinguish between positions as lessee and royalty owner is made plain by the fact of the execution by the petitioner of a separate instrument, called "Royalty Owner's Agreement", wherein in substance it agreed, "so far as it may lawfully do so as owner of a portion of the royalty

interest reserved in the lease", that International need not drill offset wells and might designate the purchaser of the "royalty oil and gas." The contract between petitioner and International covering the whole transaction provided, first, that petitioner sell and assign an oil and gas lease executed not by petitioner, but in 1921 by T. D. Lewis and wife; and in sharp contrast thereto, provided for execution of "an original oil and gas lease from Badger Oil Company as lessor, to International Petroleum Corporation" upon another smaller amount of land. We conclude that merger was not intended, but that the petitioner in dealing with International intended to do so as lessee-assignor.

Moreover, as a matter of law there was, in our opinion, no merger. That doctrine involves the extinguishment or "drowning" of a lesser in a larger estate. The petitioner never acquired all of the estate remaining after execution of the oil and gas lease. One-third of the right to receive royalties under the lease and under any future lease was in other hands. A lease can not, we think, be merged in any estate less than that of the full estate of the lessor. In *Wisconsin National Bank*, 4 B. T. A. 109, 113, we held that there was no merger of a lease-hold into a two-thirds interest in the fee estate, acquired by the lessee after execution of the lease. We said:

* * * Although the lessee purchased portions of the fee at different times, the leasehold, nevertheless, continued to have a legal existence in its entirety and so could have been sold or otherwise transferred as a whole at any time prior to legal merger of the lesser and greater estate through acquisition of the entire fee by such lessee.

In the present matter also approximately one-third of the royalty interest was extant in others and the lease was in fact sold or otherwise transferred as a whole—"prior to legal merger of the lesser and greater estate through acquisition of the entire fee by such lessee." Quoting Bouvier, we also observed:

"To have the union operate a merger, the estates must unite in one and the same person, having a commensurate and coextensive interest in each, with no intervening interest in another. A legal estate in fee in one who has only a partial equitable interest, or vice versa, would not merge. *In re Washburn's Estate*, 11 Cal. App. 735; 106 Pac. 415."

We consider it clear that the outstanding one-third interest in the royalties was an intervening estate, and that the whole lease can not merge in less than the whole interest of the lessor. The outstanding royalty interests had a right to continuance of the lease and to payment of royalties thereunder. A conception of the lease merged as to two-thirds of the royalty interests, but still existent as to one-third, is an anomaly. Less than the entire lessor's interest can not encompass and "drown" a lease under which every part of the lessor's interest has rights.

This is no matter of mere legal formality, but one of logic and legal rights of parties. Petitioner, having assigned in due form, its lease, seeks to demonstrate the transaction to be other than mere assignment, with its attendant results as to depletion, and must show reason why the lease has ceased to be such. That reason, we consider not to have been shown, but, on the contrary, we consider that reason and logic point to continuance of the lease. In effect petitioner relies upon the general idea that an economic interest gives right to depletion, but imports the economic interest from its royalty interests (where it is not denied, but given effect by depletion allowed by the respondent) into the leasehold interest. In the royalty interests the petitioner had an investment of $40,000. It is plain that, by depletion allowed on royalties, petitioner is recovering this investment, because in truth the income from royalties is under the statute "gross income from the property", i. e., the property conveyed by warranty deed, including royalty rights. But it is equally plain that the $305,000, or that portion thereof obtained for assigning the leasehold, is not income from the same property, but is the sale prices of the leasehold, in which the petitioner had a base entirely different from the $40,000 invested in the property conveyed by warranty deed. That investment in the leasehold is not properly recoverable from depletion proper upon a different capital investment. Depletion is allowed "to the recipients of the gross income from the oil and gas by reason of their capital investment in the oil and gas in place." *Helvering* v. *Bankline Oil Co.*, 303 U. S. 362; *Helvering* v. *O'Donnell*, 303 U. S. 370. Such investment by the petitioner was the $40,000, not the investment in the lease itself. Moreover, it is to be noted that the $305,000 was not payable in any part out of any oil produced, as in such cases as *Palmer* v. *Bender*, 287 U. S. 551; *Marrs McLean*, 41 B. T. A. 565. Though $165,000 of the full consideration of $365,000 paid (including $60,000 for personal property) was not paid at the date of transfer, but was paid later in 1935, the amount was represented by promissory notes, secured by a deed of trust on the lease assigned, the original lease, and the $18,000 oil payment, the deed of trust providing that upon default the properties should be sold at public outcry in satisfaction of the notes. Obviously, this is not reservation of economic interest. It can not be said, as is said in *Anderson* v. *Helvering*, 310 U. S. 404, limiting *Thomas* v. *Perkins*, 301 U. S. 655, that "the reserved payments are to be derived solely from the production of oil and gas." We conclude and hold that the petitioner is not entitled to depletion as to the amounts received for assignment of the lease to International.

In the state of the record the same must be said as to the original lease executed by the petitioner to International. This comprises a comparatively small portion of the total acreage involved, i. e., 160 acres as compared with about 1,327 acres in the lease assigned. The

value of the original lease at execution is not shown. The $305,000 consideration is not divided between original lease and assigned lease. Therefore, even though we should assume that the existence of the Martin lease (if it still existed as to the 160 acres) is without effect on the question as to depletion on any consideration paid for the new lease, and that under *Herring* v. *Commissioner*, *supra*, the petitioner as original lessor might be entitled to depletion upon bonus received, since there is no evidence in the record herein as to what, if anything, was received as consideration or bonus for the 160-acre lease, respondent's determination in that respect is approved. No error being found in respondent's action in disallowing depletion,

*Decision will be entered for the respondent.*